UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**

**VERSUS**

**JACQUE BUTLER**

**CR. NO. 17-140-JWD-RLB**

**JUDGE JOHN W. deGRAVELLES**

## RULING AND ORDER

Before the Court is a Motion to Suppress filed by Defendant Jacque Butler ("Defendant"). ("Motion," Doc. 21). The Government opposes the Motion, (Doc. 24), and Defendant has filed a Reply in further support of the Motion, (Doc. 29). A hearing was held on April 18, 2018, (Doc. 34; *see also* Doc. 37 ("Hrg. Tr.")). Following the hearing, the parties filed additional briefs on the Motion. (Docs. 40, 41).

Defendant's post-hearing brief also asks the Court to compel disclosure of the identity of a confidential informant ("CI"). (Doc. 40 at 2-6). The Government opposes this request. (Doc. 41 at 6-9).

For reasons set forth below, the Motion and Defendant's request to compel disclosure are denied.

### I. FACTUAL BACKGROUND AND INITIAL BRIEFING

On August 16, 2017, Judge Mike Erwin of the Nineteenth Judicial District Court of the State of Louisiana issued a warrant authorizing the search of an apartment on North Lobdell Boulevard in Baton Rouge, Louisiana. (Doc. 21-1 at 4). The apartment was Defendant's residence. (Doc. 21-3 at 1). Pursuant to the search warrant, officers discovered and seized narcotics and firearms in the apartment, and they arrested Defendant. (*Id.*). The narcotics and firearms seized are the subject of the instant federal charges against Defendant. (*See id.*; *see also*

Doc. 1 (three-count Indictment for being a felon in possession of firearms; possession of marijuana, hydrocodone, and alprazolam with intent to distribute; and possession of firearms in furtherance of a drug trafficking crime)).

In an affidavit in support of the issuance of the search warrant, Deputy Sheriff Nathan Harrison made the following statements:

> On or about August 15, 2017, Affiant with EBRSO Narcotics Division was contacted by a proven reliable confidential informant (CI), relative to the use and sale of a controlled dangerous substance within the Parish of East Baton Rouge. Through this CI's cooperation, Affiant has been able to seize quantities of Marijuana, Cocaine, Heroin on more than one occasion along with the arrest of (5) five or more subjects for narcotic related felonies.
>
> This CI advised that he/she knows a b/m subject known as Jacque who resides at 2022 N. Lobdell Blvd. Apt. #73, Baton Rouge La. 70806 and who is involved in the sale and/or use of Marijuana from said residence at any time during the day or night. Through independent source the subject who lives at 2022 N. Lobdell Blvd. Apt. #73 was identified as Jacque Maurice Butler B/M DOB 09/27/1970. The CI was shown a picture of Jacque Butler, who positively identified Jacque Butler as the person who lives at 2022 N. Lobdell Blvd. Apt. #73 and sells Marijuana from said residence.
>
> Affiant advises that on or about August 16, 2017, the CI advised him that he/she saw an amount of Marijuana packaged for sale while inside the residence located at 2022 N. Lobdell Blvd.. Apt #73. The CI also advised affiant that he/she has observed several sales of Marijuana to people from said apartment. Affiant also advises that Jacque has been arrested on several occasions for possessing illegal narcotics. The CI also advised affiant that Jacque has two handguns in his possession at this time.

(Doc. 21-1 at 1-2 (errors in original)).

According to the Motion, the warrant's showing of probable cause was based almost entirely on information supplied by the CI, but the affidavit's allegations concerning the CI's reliability were "bare bones" and "woefully inadequate" in that they provided little information about instances of prior cooperation or the circumstances under which the CI was then cooperating. (Doc. 21 at 2; Doc. 21-3 at 4-5). Moreover, Defendant maintains that the CI

provided false information, namely (1) the reference to drug activity "any time during the day or night," as Defendant and his girlfriend are the only two occupants of the apartment and usually work from 6:00 A.M. until 3:30 P.M.; and (2) the statement that "on August 16, 2017 . . . [the CI] saw an amount of marijuana packaged for sale while inside the residence[,]" as Defendant denies that anyone besides him and his girlfriend was in the apartment that morning or the night before. (Doc. 21 at 2-3; Doc. 21-3 at 5). Defendant also represents that he knows the identity of the CI, and that individual has never been inside the apartment; could not have seen marijuana packaged for sale in the apartment or sales of marijuana from the apartment; and has never seen Defendant in possession of any guns. (Doc. 21 at 4-5; Doc. 21-3 at 5). The Motion seeks the suppression of all evidence seized during the search of Defendant's apartment; it also requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to substantiate his claims. (Doc. 21 at 1; Doc. 21-3 at 4-5).

The Government opposes the Motion and also opposed the holding of a *Franks* hearing, arguing first that the affidavit adequately alleged the CI's reliability by explicitly claiming that the CI was "proven reliable" and describing the CI's "area of proven reliability" as well as prior instances of cooperation and their results. (Doc. 24 at 2, 5-6). The Government also argues that Defendant has not shown that statements in the affidavit were false: Defendant challenges "only the ability of the unidentified CI to make the observations contained in the affidavit," not the veracity of the observations, and offers the Court "only his assumption as to the identity of the CI." (*Id.* at 6-7). Finally, the Government maintains that, to invalidate a search warrant, a defendant must show that the *affiant* made the affidavit with (at least) reckless disregard for the truth, and Defendant's allegations to this effect are conclusory. (*Id.* at 7). Defendant's Reply generally reasserts arguments previously made. (Doc. 29 at 1-5).

3

## II. THE HEARING

The Court held a hearing on April 18, 2018, at which Defendant, Harrison, and Defendant's former supervisor testified. The testimony of Defendant and his supervisor was taken first, with the Government "reserv[ing] its position" on whether a *Franks* hearing was appropriate. (Hrg. Tr. at 5). Defendant's supervisor testified that Defendant was a dependable employee who worked long and varying hours. (*Id.* at 10-12, 16-17, 18-19). Defendant's supervisor also testified that Defendant was a "gun enthusiast" who, on one occasion, had brought a rifle to work to show his supervisor and to take to a gun range after work. (*Id.* at 14-15).

Defendant testified that, in August 2017, when he and his girlfriend were at work, there were no other people in his apartment. (*Id.* at 28, 49-50). Defendant confirmed that he was a "gun enthusiast" and admitted that he had possessed firearms after being convicted of a felony as charged in Count One of the Indictment. (*Id.* at 30, 33, 75). Defendant further testified that "all the drugs" seized on August 16, 2017 "came from" a person named Benjamin Square, from whom Defendant had purchased drugs in the laundry room of his apartment complex on August 9 and August 13, 2017. (*Id.* at 31-32, 33-34). Defendant also testified that, on August 14, 2017, Square brought him additional drugs and offered to buy back and resell some of the marijuana that Defendant had purchased, but Defendant refused. (*Id.* at 35-36). Defendant stated that the drugs he had purchased were solely for his own use and that the guns had "nothing to do with the drugs," such that he was innocent of Counts Two and Three of the Indictment. (*Id.* at 32-33). Defendant testified that he had not sold any drugs from the apartment during the month preceding the search. (*Id.* at 50). Defendant stated that Square had never been in his apartment in 2017. (*Id.* at 34-35). Defendant further testified that, during the search, the firearms were

4

found in a bedroom or bedroom closet at the back of the apartment, while the drugs were found in the front room of the apartment. (*Id.* at 40-41). Defendant testified that he believed that the CI was Benjamin Square. (*Id.* at 77-78). Defendant also confirmed on cross-examination that he had no personal knowledge about most of the statements in Harrison's affidavit. (*Id.* at 78-81). Defendant clarified his position that "the CI lied to the detective when he said that he was inside of [Defendant's] apartment, first of all, and he lied to him again when he said [Defendant] was selling drugs." (*Id.* at 82). Defendant further clarified that he did not know whether Harrison or the CI lied, but "somebody did." (*Id.* at 82-84). Defendant also stated that he believed Square to be the CI because he was "the only person" who knew that Defendant possessed drugs during the month preceding the search. (*Id.* at 86).

Defendant rested, and the Court inquired as to the parties' position on the appropriateness of a *Franks* hearing. (*Id.* at 87). Defense counsel stated that he believed that the Court was already in the process of holding a *Franks* hearing and asked for post-hearing briefing if the Court was "not inclined to rule immediately." (*Id.* at 87-88). The Court asked the Government if it wished to "put on any evidence," and the Government called Harrison to testify. (*Id.* at 88). According to Harrison, the CI advised that Defendant was selling marijuana from the apartment and that he had seen two firearms there. (*Id.* at 90). Harrison testified that he had worked with this CI on more than one occasion in the past and had "recovered" narcotics "and/or" firearms based on information provided by the CI. (*Id.* at 90-91). He also confirmed that the CI's assistance had led to the prosecution of individuals in East Baton Rouge Parish. (*Id.* at 91). Harrison testified that Square was not the CI. (*Id.*). On cross-examination, Harrison stated that he was unwilling to say who the CI was, and the Government invoked *Roviaro v. United States*,

353 U.S. 53 (1957).[1] (*Id.* at 93). Harrison also confirmed that he "acted just on the word of" the CI, without conducting a "buy or a bust or anything." (*Id.* at 94).

### III. POST-HEARING BRIEFING

In his post-hearing brief, Defendant first argues that the Motion is ripe for decision notwithstanding any uncertainty about whether a *Franks* hearing was "formally approved." (Doc. 40 at 1). Defendant also states that, according to representations by the Government, the CI in this case is a mere "tipster," not someone who purchased drugs from Defendant. (*Id.* at 2). Defendant's post-hearing brief also reiterates his challenge to the affidavit's "bare bones" or missing statements concerning the CI's reliability, instances of past cooperation, or circumstances underlying his then-present cooperation, as well as the allegedly false statements described *supra*. (*Id.* at 3).

Defendant further requests that the Court compel disclosure of the identity of the CI under the three-factor balancing test discussed in *United States v. Ortega*, 854 F.3d 818 (5th Cir. 2017). (*Id.* at 2-3). Although Defendant acknowledges that the factors generally tend not to favor disclosure, at least "at first blush," he argues that disclosure is warranted because: (1) Defendant is "unable to remember anyone" other than Square who may have "remotely been in position" to offer the information in the affidavit; (2) if the CI may testify at trial, knowledge of the CI's identity will be necessary to prepare a defense; and (3) Defendant is incarcerated, his guns have been seized, and, in any event, he has never used a gun to commit a crime, and he therefore poses "little risk of a direct threat" to the CI. (*Id.* at 3-6). Defendant argues that his credibility is enhanced by his willingness to essentially admit to Count One while describing the

---

[1] *Roviaro* described the so-called "informer's privilege" as "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. at 59.

careful measures he took to possess firearms safely. (*Id.* at 5). Defendant further admits to some past arrests for "police officer battery and resistance," but he claims that "virtually no such incidents" have resulted in convictions. (*Id.* at 6).

The Government opposes both the original Motion and Defendant's request to compel disclosure. (Doc. 41 at 2). The Government generally reiterates its previous arguments concerning suppression. (*Id.* at 2-6). With respect to disclosing the CI's identity, the Government argues that: (1) the CI was not an active participant in the charged criminal activity; (2) Defendant has not shown that the CI's identity would be helpful in his defense, as he has not asserted any particular defenses, articulated what he believes the CI's testimony will be if the CI is called, or explained how this testimony will aid his defense; and (3) Harrison has informed the Government that the CI is still operating as a CI in East Baton Rouge Parish, such that disclosure of his identity could endanger the CI and threaten his usefulness as an informant. (*Id.* at 6-9). The Government also represents that it does not currently intend to call the CI at trial. (*Id.* at 8 n.4).

**IV. DISCUSSION – Request to Compel Disclosure of CI's Identity**

Given the centrality of the CI's identity to several of Defendant's arguments, the Court first considers whether to compel disclosure of the CI's identity.

As the Fifth Circuit has observed, the Government's privilege to withhold from disclosure the identity of a CI is not "absolute"; when a motion to compel the disclosure of a CI's identity is made, a court should balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Ortega*, 854 F.3d at 824. Specifically, a court must consider (1) the "level" of the CI's activity; (2) the helpfulness of the disclosure to the asserted defense; and (3) the Government's interest in nondisclosure. *Id.*

### i. Level of CI's Activity

With respect to the first factor, the more active a CI's participation in the alleged criminal activity, the more likely it is that disclosure will be required. *United States v. De Los Santos*, 810 F.2d 1326, 1331 (5th Cir. 1987). If a CI's participation is minimal, nondisclosure is favored, and the disclosure of the identity of a "mere tipster" is not required. *Id.*

Here, Defendant and the Government both acknowledge that the CI is a "mere tipster," not someone who purchased drugs from Defendant; certainly, neither party has presented any evidence to the contrary. (Doc. 40 at 2; Doc. 41 at 7). Defendant's remaining argument on this point – that the CI's identity is "necessary since he is unable to remember anyone other than [Square]" who was in the position to offer the information in the affidavit – little informs the extent of the CI's involvement in any criminal activity. At most, it amounts to a flat denial that any CI in the position to offer the information exists. Therefore, this factor weighs against disclosure.

### ii. Helpfulness of Disclosure to Defense

The second factor considers the helpfulness of disclosure to any asserted defense. *De Los Santos*, 810 F.2d at 1331. The defendant must make a "sufficient showing" that the CI's testimony would "significantly aid the defendant in establishing an asserted defense"; "mere conjecture or supposition" about the relevance of testimony is insufficient. *Id.*; *see also Ortega*, 854 F.3d at 825 (second factor not met where defendant offered only "unsubstantiated speculation" about helpfulness of testimony). Here, the Court agrees with the Government that Defendant's arguments concerning this factor are based on "supposition" as to whether the CI is likely to be called as a witness and very general assertions as to what the CI might testify about. (Doc. 40 at 4; Doc. 41 at 8). Indeed, Defendant acknowledges that, "if the CI is not to be a trial

witness, at first blush, *Ortega* . . . tends to hold this factor against [Defendant]," (Doc. 40 at 4), and the Government represents that it does not intend to call the CI as a witness, (Doc. 41 at 8 n.4). The second factor favors nondisclosure.

### iii. Government's Interest in Nondisclosure

The third factor is the Government's interest in non-disclosure, which "relates to" both the safety of the CI and his future usefulness as a source of information. *De Los Santos*, 810 F.2d at 1331. Here, the Government represents that the CI in this case is continuing to operate as a CI in East Baton Rouge Parish, such that disclosure of his identity might threaten his safety and future usefulness. (Doc. 41 at 9).

The Court agrees with the Government that this factor favors nondisclosure. Defendant argues principally that he poses "little risk of a direct threat to the CI," given his incarceration and general disposition for non-violence. (Doc. 40 at 4-6). However, such a "direct threat" is only one of the concerns underlying this factor, and Defendant does little to address other serious risks associated with disclosure. For example, the disclosure of a CI's identity heightens the risk that ongoing or future investigations of others will be impeded and that the CI will be endangered when people involved in those investigations discover his cooperation with law enforcement. *See United States v. Ibarra*, 493 F.3d 526, 532 (5th Cir. 2007) (district court properly ruled that Government had "substantial interest" in nondisclosure due to "real risk" to safety of CI his family and threat to "other ongoing criminal investigations").

Taken individually or collectively, the factors favor non-disclosure. Accordingly, Defendant's request to compel disclosure of the CI's identity will be denied. The Court now turns to Defendant's arguments concerning suppression.

## V. DISCUSSION – Motion to Suppress

### a. General Principles

The Fifth Circuit uses a two-step process to analyze a district court's decision to grant or deny a motion to suppress based upon the sufficiency of a warrant. *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015). The first question is "whether the good faith exception to the exclusionary rule, articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is applicable." *Id.* The good faith exception provides that, if reliance on a defective warrant is "objectively reasonable," the Fourth Amendment does not require suppression of evidence obtained pursuant to that warrant. *Id.* The Fifth Circuit has further opined, however, that the good faith exception does not apply where: (1) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant; (3) the underlying affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006).

The second question is whether the affidavit established probable cause that the evidence to be seized would be found in the place to be searched, justifying issuance of the warrant. *Moore*, 805 F.3d at 593. An affidavit in support of a warrant must provide the issuing judge with "a substantial basis for determining the existence of probable cause," and a "wholly conclusory statement" will not suffice. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the

circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238-39. Where an affidavit in support of a warrant relies on statements by a CI, Fifth Circuit courts consider the CI's "veracity, reliability and basis of knowledge as important factors[.]" *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987).

*Franks* "set[s] out the legal principles that govern how courts are to address a defendant's allegations of false statements in warrant affidavits." *United States v. Looney*, 532 F.3d 392, 394 (5th Cir. 2008) (per curiam). The Fifth Circuit has recently reiterated these principles:

> Under the Supreme Court's decision in *Franks*, a search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause. *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *see also* [*United States v.*] *Alvarez*, 127 F.3d [372,] 373–74 [(5th Cir. 1997)] ("If a search warrant contains a false, material statement made intentionally or with reckless disregard for the truth, the reviewing court must excise the offensive language from the affidavit and determine whether the remaining portion establishes probable cause."). Although the *Franks* inquiry is often described as two prongs, . . . the inquiry effectively consists of three questions, all of which must be met. First, does the affidavit contain a false statement? *See, e.g., United States v. Singer*, 970 F.2d 1414, 1416–17 (5th Cir. 1992) (affirming denial of motion to suppress because affidavit's statement was not false). Second, was the false statement made intentionally or with reckless disregard for the truth? *See, e.g., Looney*, 532 F.3d at 394–95 (affirming denial of motion to suppress because affiant officer did not intentionally or recklessly include the false statement). And third, if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause? *See, e.g., United States v. Froman*, 355 F.3d 882, 889–91 (5th Cir. 2004) (assuming that purportedly false statement should be excised and affirming denial of motion to suppress because remaining content in affidavit established probable cause).

*Ortega*, 854 F.3d at 826; *compare Looney,* 532 F.3d at 394 ("[E]ven if the defendant proves that one or more statements in the affidavit are false, and yet fails to prove that the affiant

deliberately or recklessly included such false information in the affidavit, the court may consider the entire affidavit-without any excision-under the good-faith exception to the exclusionary rule."), *with United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002) ("The good-faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth."). To obtain a *Franks* hearing, a defendant is required to make a "substantial preliminary showing" that the *Franks* standard is met. *See United States v. Calmes*, 608 F. App'x 307, 308 (5th Cir. 2015) (citing *Franks*, 438 U.S. at 155).

    **b. Analysis**

        **i. Good Faith Exception**

Preliminarily, the good faith exception does not much inform the outcome of this case. The Fifth Circuit has stated that the good faith exception does not apply, *inter alia*, where the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth or where "the underlying affidavit is 'bare bones' ('so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable')." *Mays*, 466 F.3d at 343; *see also Cavazos*, 288 F.3d at 709-10 (good faith exception does not apply where affidavit contains a false statement made intentionally or with reckless disregard for its truth). All of the Motion's claims appear to fall into one of these two categories, so, if Defendant is entitled to suppression on the grounds asserted, the good faith exception will not bar relief.

        **ii. CI Reliability**

Defendant argues that the affidavit's allegations concerning the CI's reliability are "bare bones" and inadequate in that they provide little information about instances of prior cooperation

or the circumstances under which the CI was presently cooperating. (Doc. 21 at 2; Doc. 21-3 at 4-5; Doc. 40 at 3). The relevant portion of the affidavit reads as follows:

> On or about August 15, 2017, Affiant with EBRSO Narcotics Division was contacted by a proven reliable confidential informant (CI), relative to the use and sale of a controlled dangerous substance within the Parish of East Baton Rouge. Through this CI's cooperation, Affiant has been able to seize quantities of Marijuana, Cocaine, Heroin on more than one occasion along with the arrest of (5) five or more subjects for narcotic related felonies.

(Doc. 21-1 at 1).

Although the affidavit is terse, it provided a sufficient basis for the issuing judge to evaluate the CI's reliability and ultimately find probable cause. The Fifth Circuit reviewed its jurisprudence on this issue in *United States v. McKnight*:

> Much of the case against McKnight was based on evidence found at McKnight's house pursuant to the execution of the search warrant which was premised on the affidavit of Chief Deputy Gaines that included the following:
>
>> "C.R. Gaines, is Chief Deputy for the Waller County Sheriff's Department and a licensed peace officer of the State of Texas. Affiant has received information from Raymond Cooke, Waller County Constable of Precinct 1 and a licensed peace officer for the State of Texas who told the affiant he had received information from a Confidential Informant that he knows to be reliable and has furnished him information in the past that has proved to be reliable and true. The Confidential Informant advised that he has been in the residence of Gerald F. McKnight, the above described residence, during the past 72 hours and that there had been a chemical process going on known as a "Cook" for the purpose of manufacturing a controlled substance known to the CI to be methamphetamine. The informant has given information on methamphetamine cooks and chemicals before and is familiar with the chemicals and processes used to manufacture methamphetamine.
>>
>> "The CI further stated that the substance had been thru the final stage of manufacturing and had been "powdered out" into crystal methamphetamine. The CI further stated that the substance known to him to be methamphetamine was now hidden in an out building on the property. The above affiant, based on twenty three years of law enforcement experience and the information received from the confidential informant, does believe that methamphetamine is located in the above described location."

13

> McKnight contends that this is a "bare bones" affidavit of the kind that was found to be insufficient to establish probable cause for the issuance of a warrant in *United States v. Barrington,* 806 F.2d 529 (5th Cir. 1986), and *United States v. Kolodziej,* 712 F.2d 975 (5th Cir. 1983). However, as the government points out, this Court in *Christian v. McKaskle,* 731 F.2d 1196 (5th Cir. 1984), and *United States v. Hall,* 545 F.2d 1008 (5th Cir. 1977), upheld probable cause determinations based on affidavits nearly identical in content to this one.
>
> The affidavit in this case sets forth details regarding the informant's presence at McKnight's house and his observations therein by which a magistrate could judge whether the informant had a sufficient basis of knowledge of the operations supposedly being conducted at McKnight's house. *The Constable's assertion that the confidential informant was "reliable" and had "furnished him with information in the past that has proved to be reliable and true" provided the magistrate with sufficient indicia of the reliability and veracity of the informant's tip.* Therefore, considering the deference this Court owes the magistrate's determination under substantial basis review, and construing the affidavit in a common sense manner, probable cause is at the very least most likely supplied by this affidavit.

953 F.2d 898, 904–05 (5th Cir. 1992) (emphasis added; continuing on to find that the affidavit and warrant "clearly qualify" for good faith exception).[2]

With respect to the CI's general reliability, the affidavit in this case is as detailed as, and arguably more detailed than, the affidavit at issue in *McKnight*. In *McKnight*, no information about the circumstances of the CI's then-current cooperation was provided, and information about the CI's general reliability was limited to fairly short, conclusory statements (*i.e.,* "from a Confidential Informant that he knows to be reliable and has furnished him information in the past that has proved to be reliable and true"). Here, in addition to stating that the CI was "proven reliable," Harrison provided information about the nature of several past instances of cooperation, including that some instances had resulted in arrests.

---

[2] That the Fifth Circuit continued on to apply the good faith exception where there were allegations of a "bare bones" affidavit is arguably in tension with *Mays*'s statement that the good faith exception will not apply where the underlying affidavit is "bare bones." 466 F.3d at 343. This issue need not delay the Court long: under any standard, the affidavit in this case was not "bare bones" within the meaning of Fifth Circuit law.

14

Defendant relies principally on two distinguishable out-of-circuit cases in arguing that the statements in the affidavit were insufficient. In *United States v. Glover*, the Seventh Circuit emphasized "one critical difference" between that case and cases upholding search warrants, namely "the complete omission of known, highly relevant, and damaging information about [the CI's] credibility—his criminal record, especially while serving as an informant; his gang activity; his prior use of aliases to deceive police; and his expectation of payment." 755 F.3d 811, 817 (7th Cir. 2014). *Glover* itself expressly distinguished an earlier case in which "there was no evidence that the police withheld from the magistrate any adverse information about the informant's credibility," and, although the judge "made the probable cause determination without meaningful credibility information, . . . there was no evidence that such information was available or material." *Id.* (citing *United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010)). Here, as in *Dismuke* and unlike in *Glover*, there is no suggestion that known, highly relevant, and damaging information exists and was withheld.

Similarly, in *United States v. Higgins*, upon which Defendant also relies, the Sixth Circuit emphasized "two critical respects" in which that case differed from cases upholding search warrants, namely the affidavit's failure to (1) attest to the CI's reliability; and (2) establish a "nexus" between the place to be searched and the evidence sought, as it did not claim that the CI had "been inside Higgins's apartment, that he had ever seen drugs or other evidence inside Higgins's apartment, or that he had seen any evidence of a crime other than the one that occurred when Higgins allegedly sold him drugs." 557 F.3d 381, 389 (6th Cir. 2009). Although Defendant disputes whether the CI in this case was ever *actually* in his apartment or observed him engaging in criminal activity, the affidavit did not fail to *allege* both the CI's reliability and a nexus between the place to be searched and the nature of the evidence sought.

15

For the foregoing reasons, Defendant's argument concerning the alleged "bare bones" nature of the affidavit fails.

### iii. Falsity of Statements Not Dependent on CI's Identity

Next, the Court considers whether Defendant has shown by a preponderance of the evidence that specific statements in the affidavit were false.[3] *Ortega*, 854 F.3d at 826 (first of the three *Franks* "questions" is "does the affidavit contain a false statement?"). The Court first considers those challenges which do not depend on the identity of the CI. Defendant challenges the two statements underlined below:

> This CI advised that he/she knows a b/m subject known as Jacque who resides at 2022 N. Lobdell Blvd. Apt. #73, Baton Rouge La. 70806 and who is involved in the sale and/or use of Marijuana from said residence **at any time during the day or night**. Through independent source the subject who lives at 2022 N. Lobdell Blvd. Apt. #73 was identified as Jacque Maurice Butler B/M DOB 09/27/1970. The CI was shown a picture of Jacque Butler, who positively identified Jacque Butler as the person who lives at 2022 N. Lobdell Blvd. Apt. #73 and sells Marijuana from said residence.
>
> **Affiant advises that on or about August 16, 2017, the CI advised him that he/she saw an amount of Marijuana packaged for sale while inside the residence located at 2022 N. Lobdell Blvd.. Apt #73**. The CI also advised affiant that he/she has observed several sales of Marijuana to people from said apartment. Affiant also advises that Jacque has been arrested on several occasions for possessing illegal narcotics. The CI also advised affiant that Jacque has two handguns in his possession at this time.

(Doc. 21-1 at 1-2).

Defendant argues that the first underlined statement was false because "[Defendant] and his girlfriend, the only two occupants of the home, both held jobs in which they usually left the home for work at about 6:00 am, not returning until about 3:30 pm, making the reference to use or sales at 'any time' particularly misleading." (Doc. 21 at 2). Defendant argues that the second

---

[3] The Court agrees with Defendant that, regardless of how the April 18, 2018 hearing was styled or any confusion about whether a *Franks* hearing was ordered, the Court is now in possession of the parties' evidence and positions on the *Franks* issue, and the most sensible course of action is simply to consider the ultimate issues raised in the Motion. (*See* Doc. 40 at 1 (citing *Ortega*, 854 F.3d at 825 n.8)).

underlined statement was false because Defendant "denies anyone, other than his girlfriend, was in the house that morning or the night before, so that no one else could have made such an observation." (*Id.* at 3).

The Fifth Circuit addressed the standards applicable to similar claims of falsehood in *United States v. Singer*:

> Singer's argument rests on an apparent discrepancy between the affidavit and a DEA report. Officer Sullivan's affidavit states that "Bater [sic] further stated that ... Singer told Bater that he maintained supplies of cocaine at his residence." The DEA report contains this statement: "[Blank] reports that Singer does not keep his supply of cocaine inside his residence. Singer supposedly conceals the cocaine in a storage safe built into the floor of his garage or keeps it at this girlfriend's residence." The district court concluded that the challenged statement was not false and denied the motion to suppress. We cannot disagree.
>
> As this court stated in *United States v. Hare,* 772 F.2d 139, 141 (5th Cir. 1985), "[a] statement in a warrant affidavit is not false merely because it summarizes or characterizes the facts in a particular way." As in *Hare,* we find that the "challenged statement, though ambiguous, reasonably could and should be read truthfully." *Hare,* 772 F.2d at 141. Here, the term "residence" could reasonably and sensibly be read to include Singer's garage, thereby removing the facial inconsistency on which Singer relies.
>
> Singer relies heavily upon *United States v. Bennett,* 905 F.2d 931 (6th Cir. 1990). *Bennett,* however, presents a different case, for there the affiant himself testified that the challenged statements were false. *Bennett,* 905 F.2d at 934. As in [*United States v.*] *Namer*, [680 F.2d 1088, 1093 (5th Cir.1982),] but not in *Hare* or the present case, "the challenged statement could not reasonably have been read in a truthful way." *Hare,* 772 F.2d at 141. The district court did not err in rejecting Singer's argument.

970 F.2d 1414, 1417 (5th Cir. 1992); *see also Ortega*, 854 F.3d at 826 (citing *Singer* for proposition that "an affidavit's statement was not false because the wording used 'could reasonably and sensibly be read' in a truthful manner").

Defendant's arguments fail. The affidavit's statement concerning sales "at any time during the day or night" is a clear case of "summariz[ing] or characteriz[ing] the facts in a particular way" that reasonably could be read truthfully. *Hare,* 772 F.2d at 141. That is, the

17

affidavit may reasonably be read to assert that Defendant uses or sells marijuana at the apartment at varying times on an unpredictable schedule, including outside of normal business hours. Reading the statement literally would imply that there is no time at which marijuana is not being sold or consumed at the apartment. The Court need not accept that construction when the challenged statement is subject to more reasonable interpretations.

Defendant's argument concerning the timing of the CI's alleged observation of marijuana packaged for sale is similarly unavailing. Again, the challenged statement reads:

> Affiant advises that on or about August 16, 2017, the CI advised him that he/she saw an amount of Marijuana packaged for sale while inside the residence located at 2022 N. Lobdell Blvd.. Apt #73.

(Doc. 21-1 at 2). Defendant contends that only he and his girlfriend were inside the apartment on August 16, 2017 or the night before. (Doc. 21 at 3). However, one fair reading of the challenged statement attests only to the date on which the CI gave Harrison this information and not the date on which the CI made the observation. Therefore, for the same reasons just discussed, the statement is not necessarily "false" under applicable law.

### iv. False Statements Dependent on CI's Identity

Defendant's remaining challenges to allegedly false statements are based on his alleged knowledge of the CI's identity. (Doc. 21 at 4). According to the Motion as clarified by Defendant's testimony, Square is the CI, and Square has not been inside the apartment, has not seen "sales of marijuana to people from said apartment," has not seen Defendant with guns, and has not been told by Defendant that Defendant has guns. (*See id.* at 4-5).

At the hearing, however, Harrison testified that Square was not the CI. (Hrg. Tr. at 91). Defendant has not claimed that Harrison was lying and, regardless, the Court finds this statement credible. Additionally, as discussed *supra*, the Court will not compel the Government to disclose

the CI's identity. Thus, in evaluating the falsity of the remaining challenged statements, the Court is left with little more than Defendant's claims that the unknown CI was lying. It is Defendant's burden to prove the elements of *Franks* by a preponderance of the evidence. *Ortega*, 854 F.3d at 826. Although the Court believed Defendant to be credible on several issues, the Court cannot conclude that Defendant's unsubstantiated allegations of falsity satisfy this burden.

### v. Statement Made Intentionally or With Reckless Disregard

Furthermore, even if any of the challenged statements were false, the Motion would fail for an additional reason. Under *Franks*, a movant must show that an affiant made a false statement "intentionally or with reckless disregard for the truth." *Ortega*, 854 F.3d at 826; *Looney*, 532 F.3d at 394. Here, there is simply no meaningful evidence or credible suggestion that Harrison included the CI's statements in the affidavit with either of these mental states. Defendant faults Harrison for failing to establish an "independent, corroborating basis" for the statements and that Harrison omitted from the affidavit that certain statements might be based on hearsay. (Doc. 21 at 3, 5). Particularly given the prior instances of successful cooperation between Harrison and the CI, the Court believes that these constitute, at most, allegations of "negligence or innocent mistake" inadequate to warrant suppression. *Franks*, 438 U.S. at 171; *see also United States v. Astroff*, 578 F.2d 133, 136 (5th Cir. 1978) ("In the instant case, it is clear that only a negligent misrepresentation was involved. Under *Franks*, therefore, the search warrant was valid, and even a hearing to consider allegations of negligent misrepresentation was unnecessary." (formatting altered)). The Motion fails on this alternative basis as well.

## VI. CONCLUSION

For the foregoing reasons, the Motion, (Doc. 21), and Defendant's request to compel disclosure of the CI's identity are DENIED.

Signed in Baton Rouge, Louisiana, on August 13, 2018.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**